**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds,** ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, ) | **Case No.: 25 C 4763** |
| v. ) ) | |
| **DECKERT ACOUSTICAL FLOORS, INC.,** an Illinois corporate entity, ) ) ) | |
| Defendant. ) | |

**COMPLAINT**

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund and Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (collectively herein referred to as the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann, for their Complaint against Defendant Deckert Acoustical Floors, Inc.:

**FACTS COMMON TO ALL COUNTS**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

1

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by Funds' Trustees to act on behalf of Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago & Vicinity Training Fund, Industry Funds, and with respect to the collection by Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Deckert Acoustical Floors, Inc. (the "Company"), is an Illinois corporate entity that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and the Company are parties to collective bargaining agreements, from June 1995 to present. (A true and accurate copy of the Company's "Memorandum" agreement entered into between the Union and Company which

2

adopts and incorporates the Joint Agreements between the Union and various employer associations, and also binds Company to the Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A). The Memorandum and the Joint Agreements together are referred to as the "Agreement" or the "CBA."

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund ("Training Fund"), Midwest Construction Industry Advancement Fund ("MCIAF"), Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), Midwest Wall & Ceiling Fund ("MWC"), Chicago Association of General Contractors Fund ("CAGC"), Chicagoland Construction Safety Council ("Safety Fund"), Laborers' Employers' Cooperation and Education Trust ("LECET"), Concrete Contractors Association ("CCA"), CDCNI/CAWCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), Will Grundy Industry Trust Advancement Fund ("WGITA"), Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), Illinois Small Pavers Association Fund ("ISPA"), and Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds that are collectively referred to as the "Industry Funds" or the "Ancillary Funds."

8. The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension, health and welfare, retiree health and welfare benefits and for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered

employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

9. The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide the respective Trustees with the powers to formulate, establish and maintain collection procedures for collection of contributions, and those actions, procedures and policies are binding upon all Contributing Employers.

10. The Funds' Amended and Restated Collection Policies and Procedures provides that in the event Funds file suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at the rate of twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

11. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer is liable for reasonable attorneys' fees, audit costs, interest and filing costs incurred in the collection process.

12. The Funds' Collection Policy provides any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13. In addition to fringe benefit reports, the CBA obligates Company to monthly submit and pay Dues Reports. Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit monthly to the Union office the sums so deducted.

14. The CBA also requires Company to pay contributions to the Industry Funds. These contributions are paid as part of the Company's Dues Reports. The CBA requires Company to pay six cents ($.06) for each hour worked by employees covered by the CBA to Mid-America Regional Bargaining Association Fund ("MARBA"), seven cents ($.07) for each hour to Laborers-Employers Cooperation and Educational Trust Fund ("LECET"), one cent ($.01) for each hour to Construction Industry Service Corporation Fund ("CISCO"), one cent ($.01) the Safety Fund, and seventeen cents ($.17) per hour to Laborers' District Council Laborer-Management Cooperation Committee ("LMCC"). The total Industry Fund contribution is thirty-two cents ($.32) per hour.

15. Dues Reports and contributions are due by the 10th day following the month in which the work was performed. Dues Reports and contributions that are not submitted in a timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report amount.

16. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which should have been or have been deducted from the wages of covered employees.

17. The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

18. The Agreement further requires Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

19. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company failed to submit its books and records as requested for the audit period, covering from January 1, 2022 forward, thereby depriving

5

the Funds of information and income necessary to administer the respective Funds. The Funds selected the independent auditing firm of Legacy Professionals, LLP ("Legacy") and it has been unable to conduct this Audit as the Company has failed to comply with Legacy's repeated requests.

20. Company's actions in failing to submit to the Legacy Audit violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

## COUNT I
**(Failure To Submit Delinquent Employee Benefit Contributions For the Audit Period January 1, 2022 to Present)**

21. The Funds re-allege and incorporate the allegations contained in paragraphs 1-20 of this Complaint.

22. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the period of January 1, 2022 to the present, but:

(a) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Pension Fund from January 1, 2022 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Welfare Funds from January 1, 2022 to present, thereby depriving the Welfare Fund contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay all contributions owed to Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Funds from January 1, 2022 to present, thereby

depriving the Retiree Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing Retiree Welfare benefits of the participants and beneficiaries;

(d)    failed to report and pay all contributions owed to the Training Funds from January 1, 2022 to present, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries;

(e)    failed to report and pay all contributions owed to the Industry Funds from January 1, 2022 to present, thereby depriving LECET, LMCC, MARBA, CISCO and Safety Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries.

23.    Pursuant to the Agreement and the Funds' Agreements and Declarations of Trust, Company is liable for the liquidated damages assessed against the unpaid amounts owed from January 1, 2022 to present at twenty percent (20%) for the unreported monthly amount(s).

24.    The Company's failure to submit to the Legacy Audit and to timely submit monthly reports with payments of fringe benefits violates Section 515 of ERISA, 29 U.S.C. §1145.

25.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to Funds for the unpaid contributions, as well as interest and liquidated damages on all unpaid contributions, and obligated for accumulative liquidated damages on any untimely paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request that this Court:

7

a. order Deckert Acoustical Floors, Inc., to submit its books and records for the Legacy Audit, covering the period of January 1, 2022 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendant Deckert Acoustical Floors, Inc., for the amounts owed pursuant Defendant's unpaid monthly fringe benefit reports from January 1, 2022 to present, as determined by the Legacy Audit, plus liquidated damages, accumulated liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

c. enter judgment in favor of the Funds and against the Defendant Deckert Acoustical Floors, Inc., for the monthly fringe benefit reports that become due and are unpaid during the pending litigation plus liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

d. order Deckert Acoustical Floors, Inc., to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

e. award Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II
**(Failure to Submit Reports and/or Pay Monthly Union Dues)**

26. The Funds re-allege and incorporate the allegations contained in paragraphs 1-25 of this Complaint.

27. Pursuant to agreement, the Funds are duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from wages of covered employees.

28. Dues reports and contributions are due by the 10th following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at 10% of the report amount.

29. Notwithstanding the obligations imposed by the Agreement, Company has performed covered work from January 1, 2022, forward and has failed to withhold and/or report to and forward Union dues that were deducted or should have been deducted from the wages of its employees from January 1, 2022 forward, thereby depriving the Union of income and information.

30. Further, Company's failure to submit timely payments of its dues reports under the terms of the Agreement will result in accumulative liquidated damages, as those will also be subject to liquidated damages assessed at 10% of the untimely paid amount.

31. Per the Agreement, Company is liable to the Funds for the unpaid Union dues, as well as liquidated damages, accumulative liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court:

a. order Defendant Deckert Acoustical Floors, Inc., to submit to the Legacy Audit for the period of January 1, 2022 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendant Deckert Acoustical Floors, Inc., on the amounts found due and owing pursuant to the Legacy Audit, covering January 1, 2022 to present, including for all unpaid monthly dues reports from January 1, 2022 forward, plus all related liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

      c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

Chicago & Vicinity Laborers' Pension Fund, et al.,

April 30, 2025         By:   /s/ Sara S. Schumann
                             *Counsel for Plaintiffs*

Sara S. Schumann
Associate Fund Counsel
Laborers' Pension and Welfare Funds
11465 W. Cermak Rd.
Westchester, IL  60154
(773) 255-9878
SaraS@chilpwf.com



# HEADQUARTERS OF
# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092

| Joseph A Lambardo, Jr. | MEMORANDUM OF JOINT WORKING AGREEMENT | Bruno Caruso |
|---|---|---|
| Secretary-Treasurer | | President / Business Manager |

It is hereby stipulated and agreed by and between **DECKERT ACOUSTICAL FLOORS INC** hereincalled the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092, and encompassing the geographical areas of the Counties of Cook, Lake, Du Page, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Contractors of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendment thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local Union is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENREAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various collective bargaining agreements are as follows:

| | |
|---|---|
| June 1, 1991 | $18.00 Per hour Wages |
| | $ 2.22 Per hour Health and Welfare Fund |
| | $ 1.00 Per hour Pension Fund |
| to | $ .10 Per hour Training Fund |
| | $ .02 Per hour M.C.I.A.F. (Or such amount as provided in local agreement.) |
| | $ .01 Per hour Chicagoland Safety Council (If applicable in local agreement.) |
| May 31, 1992 | Dues Deductions are $ .20 Per hour for each hour worked **unless notified of an increase.** |
| June 1, 1992 | $1.05 Per hour increase per year on June 1, 1992 thru May 31, 1993 to be allocated between wages and |
| | benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same |
| to | unless additional sums are allocated. |
| | M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. |
| May 31, 1993 | Dues Deductions are $ .20 Per hour unless notified of an increase. |
| June 1, 1993 | $1.05 Per hour increase per year on June 1, 1993 thru May 31, 1994, to be allocated between wages and |
| | benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same |
| to | unless additional sums are allocated. |
| | M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. |
| May 31, 1994 | Dues Deductions are $ .20 Per hour unless notified of an increase. |
| June 1, 1994 | $1.10 Per hour increase per year on June 1, 1994 thru May 31, 1995, to be allocated between wages and |
| | benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same |
| to | unless additional sums are allocated. |
| | M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract. |
| May 31, 1995 | Dues Deductions are $ .20 Per hour unless notified of an increase. |

All additional wage rate dues checkoff, or fringe benefit increases as negotiated after May 31, 1995 shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1991 all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Cents ($.20¢) for each straight-time hour worked and Twenty Cents ($.20) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1995 and shall continue thereafter unless there has been given not less than sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at _____ this _12th_ day of _June_, 19 _91_

ACCEPTED:

Laborers' Local Union No. _96_

By _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _____
Bruno Caruso, President / Business Manager

By _Joseph A. Lombardo, Jr._
Joseph A. Lombardo, Jr., Secretary-Treasurer

DECKERT ACOUSTICAL FLOORS INC
(Employer)

By _Wayne Deckert_
(Name & Title)

_701 Pech Rd ELG IL_
(Address)

_708 741-7777_    FAX _708 741-2127_
(Telephone)

**DISTRICT COUNCIL**

Exhibit A